ROBERT MINOR, *et al. v.* THE PURSGLOVE COAL MINING CO. *et al.*

(CC. 445)

Submitted September 2, 1931.   Decided September 8, 1931.

*Donley & Hatfield* and *E. M. Everly,* for plaintiffs.
*Taplin & Fillius, H. H. Hoppe* and *Frank P. Weaver,* for defendants.

WOODS, JUDGE:

Plaintiffs pray for a discovery by defendant Pursglove Coal Mining Company of the tonnage of coal mined by it as assignee of defendant Gilbert-Davis Coal Company, now a bankrupt. The sufficiency of the bill, demurrer to which was sustained, is here on certificate. The primary question presented relates to the construction of the instrument under which the Gilbert-Davis Coal Company claimed. Is it a sale or a lease?

The instrument above referred to bears date September 1, 1925. By its terms it purports to "lease and let" to E. H. Gilbert and R. M. Davis (incorporators of Gilbert-Davis Coal Company, and now bankrupt), as "lessees," for a term of six years the coal under certain lands with the right to mine, operate and remove the said coal, which, for the purpose of the agreement, was stipulated to be 750,000 tons, at a royalty of 20c per ton, with a minimum royalty of $1,000.00 per month, beginning December 25, 1925, and in event the tonnage has not been removed by September 1, 1931, the lessees covenant to pay the remainder of the stipulated royalty of $150,000.00, upon the payment of which the lessor covenants to give a deed for the remaining tonnage, whatever it might be, with privilege of removing same. A further provision provides for the giving of a deed for the coal upon the payment of the whole of the 20c royalty on the stipulated acreage. Failure to keep and comply with the terms and conditions of the instrument, and default in the payment of any payment of royalty for a period of four months gives the lessor the right, if he so elects, to terminate said agreement and take possession of the properties so leased and let, and makes the lessees liable for $20,000.00 liquidated damages in addition to all accrued royalties. An option is given the so-called lessees, if they will pay for the royalty within two years, that a deed will not only be made for the coal, but for the land as well as all other royalties to which the owners of the fee are entitled. The rights of the lessees under the above writing were assigned to the Gilbert-Davis Coal Company.

The Pursglove Coal Mining Company, if adjudged an assignee of the Gilbert-Davis Coal Company, admits liability to account to Everly and others, as lessors, should the agreement of September 1, 1925, be construed as a lease. However, it argues that E. H. Gilbert and R. M. Davis, by virtue of said agreement, are obligated to pay $150,000.00 for the coal, and that the transaction, therefore, in law, amounts to a sale of the coal in place, with certain mining privileges, subject to the election of the lessors to terminate the agreement upon failure of Gilbert and Davis to meet certain conditions.

It is often difficult to distinguish between a lease and a sale. The line of discrimination is confessedly indistinct, and each case must in a great measure depend upon its own peculiar circumstances. The general principles of law with reference to the construction of written instruments in general, likewise apply to the construction of instruments of the character we have here. The general rule is that force and effect must be given to every word employed, if possible. *McConaughey* v. *Holt,* 102 W. Va. 290. Likewise, the parties are presumed to have used the words in the instrument in the sense in which they are generally understood. *Mills* v. *Edgell,* 69 W. Va. 421. And this is especially true of words having a definite legal signification or technical meaning. *Hickle* v. *Starcher,* 90 W. Va. 369. In 40 C. J., sec. 386, p. 992, the rule is stated that, ''Although a minining lease is a conveyance of an interest in the land there is a clear distinction between an absolute conveyance of the mineral in place and the grant of a mining right to enter upon the land and convert the mineral into personalty and dispose of it. In case of an absolute sale there is a severance of the title to the realty; in the case of a lease there is not, although the mining right entitles the lessee to extract every particle of the mineral. An ordinary mining lease with an option to purchase does not create the relation of vendor and vendee; and an instrument leasing and conveying minerals under a tract of land for a stated rental or royalties for a term of years is a lease and not an absolute grant or conveyance of a mineral in place or a conditional sale thereof.'' This statement of the law finds substantial sanction by the courts in nearly all jurisdictions, and has been approved by our own Court. *Chandler* v. *French,* 73 W. Va. 658; *Toothman* v. *Courtney,* 62 W. Va. 167. The conclusion to be drawn from the aforesaid principal cases is that from the very beginning the rights of the man who owned the land, and of the man who took the minerals from it, were worked out through the law of tenancy, without the aid of the law of sales. The propriety of a lease for the purpose of developing and working mines is recognized by all the cases and the rule established by the great weight of

authority that such leases do not constitute a sale of any part of the land, and, further, that coal or other minerals derived from the usual operation of open mines, constitutes the rents and profits of the land, and belong to the tenant of life or years. Following the Pennsylvania decisions, it has been the practice in our state in the execution of an infant's interest in mineral lands, to denominate such a conveyance as both a sale and a lease, although this Court has never held such conveyance of the infant's interest in mineral lands to be anything else than the ordinary lease.

In the instant case the fee owners carved out of the fee a particular estate and vested it in another. The instrument or conveyance gave certain title to Gilbert and Davis, to produce personal property, a product of the land. The parties so far· as we may judge, from the language used, thought they were making a lease, for as we have said they used the words signifying such an instrument, as, "lease and let." Although the agreement contained the provision that the failure of the lessees to pay the stated consideration within a certain time, would not release them· from their obligation to pay it, yet the non-payment within the time specified, six years, would divest them of any further right in the premises. The lessors at their election would be restored to the use of the mineral. So far then as the passage of title is concerned by this instrument to the lessees, it was dependent upon the payment of the $150,000.00 on or prior to September 1, 1931. The lease here, as already stated, gave the lessees the additional right to purchase the entire estate at any time within two years.

The defendant company in its contract of April 1, 1927, with the Gilbert-Davis Coal Company, treats the instrument of September 1, 1925, as a lease. It refers to the parties to that instrument as "lessor and lessee," respectively, and wherever the instrument itself is spoken of is denominated a "lease." Hence, we are furnished with a practical construction of the nature of the instrument by the demurrant. Our courts, in case of doubt as to whether an instrument is a mortgage or a conditional sale will lean in favor of determin-

ing it to be a mortgage, rather than a sale. *Davis* v. *Demming*, 12 W. Va. 281. Neither will a deed be construed to create an estate on condition unless language is used which according to rules of law, *ex proprio vigore* imports a condition, or the intent of the grantor to make a conditional estate is otherwise clearly and unequivocally indicated. 2 Devlin on Real Estate, sec. 970. It would seem to follow that a writing dealing with mineral which partakes of the nature of a lease as well as that of a sale should be considered as a lease, and the law dealing with leases applied in so far as applicable. So, according to the rules of equity, we must look to the entire instrument, giving due weight to every word as well as the subject matter in determining the character of the paper. The whole paper evinces a desideratum of the coal owner of having both his mineral mined and paid for by the imposition of terms making it both expedient and necessary upon the one contracting with him to perform this service. In view of all this, we are constrained to denominate the instrument under consideration a lease.

But, admitting the instrument to be a lease, the Pursglove Company contends that it is not bound, because the paper under which it claims is a sublease and not an assignment. What is the distinction? In 16 R. C. L. 824, we read: ''An assignment by a lessee is a transaction by which he transfers his entire interest in the demised premises or a part thereof for the unexpired term of the original lease. The form of such transaction is immaterial, its character in law being determined by its legal effect. For instance, though the transaction between the lessee and the third person is in the form of a lease, it may nevertheless operate as an assignment as between the original lessor and such third person.'' Thus it will be seen that the criterion for determining whether a transaction in the form of a lease constitutes an assignment or a sublease applies as well when but part of the leased premises is the subject of transfer as when the whole is conveyed, since the distinction between an assignment and a sublease depends upon the quantity of interest and not upon the extent of the premises transferred. So we are left to determine whether

the Pursglove Company by the paper of April 1, 1927, received the entire interest of the Gilbert-Davis Coal Company in and to the 34-acre tract for the unexpired term of the original lease. That this was the intention of the parties and the effect of their agreement is certainly evident from a common sense construction. It was simply an outright exchange between the two companies of coal interests. The Gilbert-Davis Coal Company retained no interest in the 34-acre tract (a portion of the acreage included in the lease of 1925.) The interest in the 34-acre tract has been paid for in full by the conveyance to it by the Pursglove Company of an interest in a certain acreage of Sewickley coal. It therefore becomes immaterial to the lessors whether the Pursglove Coal Mining Company paid the Gilbert-Davis Mining Company in full. The lessors, Everly, et al., under our decisions, have a double and several security for the payment of their royalties. *Kanawha Gauley Coal Co.* v. *Sharp,* 73 W. Va.. 427; *Comley* v. *Ford,* 65 W. Va. 429.

This leaves the remaining question of the multifariousness of the bill to be determined. This Court is loath to dismiss a bill for this cause. There is a general rule in equity that all persons materially interested either legally or beneficially in the subject matter involved in the suit should be made parties thereto, either as plaintiffs or defendants, so that there may be a decree that shall bind them all and full justice done in one suit. Equity will transpose parties who might be made defendants so as to make them plaintiffs, or vice versa, for the reason that all parties are considered as actors and it makes no matter on which side of the case they stand. So far as the bill has been assailed on this ground, it has been confined to the variety and extent of the relief afforded the different plaintiffs, and not to whether each party had an interest in the subject matter. As we have shown, the court is in position to remedy the matter as to the quantum of relief asked for on a hearing, if in fact they may be entitled to relief.

We are of opinion to reverse the ruling of the lower court and hold the bill good on demurrer and so certify.

*Reversed.*

*Litz, Judge* (Dissenting).