THE FIRST HUNTINGTON NATIONAL BANK, *et al.*

v.

THE GIDEON-BROH REALTY CO.

(No. 10560)

and

THE FIRST HUNTINGTON NATIONAL BANK, *et al.*

v.

THE GIDEON-BROH REALTY Co., *et al.*

(No. 10561)

Submitted September 9, 1953.   Decided December 18, 1953.

*Campbell, McNeer & Woods, Selden S. McNeer, Mc-Daniel Purcell,* for appellants.

*Fitzpatrick, Marshall, Huddleston & Bolen, Jackson N. Huddleston,* for appellees.

BROWNING, JUDGE:

Plaintiffs, co-trustees under the will of Rufus Switzer, deceased, instituted these proceedings under Chapter 55, Article 13 of the West Virginia Code, seeking a declaration of rights and obligations of the parties hereto under a written instrument dated December 27, 1919. The trial court entered a decree in which it determined the instrument to be a lease with an option, in violation of the rule against perpetuities, and declared the defendants, assignees of Azel Meadows, to have no further right or interest in the property involved.

The instrument covers four valuable lots, situate in the City of Huntington, upon which approximately $40,000.00 in improvements have been erected, the major portions by lessees in sublease agreement. The nature of the instrument is in dispute. The plaintiffs maintain that it is a lease with an option to purchase twenty-eight years subsequent to the execution thereof. The defendants assert that the instrument constituted a purchase and sale of the property, or at least was a contract of purchase by which equitable "title" immediately passed, and by which the defendants would receive the legal title, if they complied with the terms of the instrument, at the end of the twenty-eight year period. The plaintiffs contend that the rule against perpetuities was violated whether the instru-

ment is a lease with an option or a contract of purchase and sale with the legal title not vesting for a period of more than twenty-one years and the legal period of gestation. The defendants urge that the rule is not applicable, whether it be determined that the instrument constitutes a lease and option, or a contract of purchase and sale. We believe it necessary, to a proper consideration of the issues involved, to quote the instrument in its entirety, and we do so with the exception of the purely formal parts.

"*THIS DEED,* Made this the 27th day of December, 1919, by and between RUFUS SWITZER, and EMMA B. SWITZER, his wife, and F. F. McCULLOUGH, and ALICE V. McCULLOUGH, his wife, parties of the first part, and AZEL MEADOWS, party of the second part.

"*WITNESSETH:* That the parties of the first part for and in consideration of the rents herein reserved and the covenants and agreements hereinafter contained, and by the said party of the second part, to be paid, and performed do hereby grant, demise and lease unto the said Azel Meadows, the following described real estate: All those certain lots, pieces or parcels of land, situate in the City of Huntington, Cabell County, West Virginia, known and designated on a certain map of the said City of Huntington, made by Rufus Cook, Surveyor, a lithograph copy of which was filed in the recorder's office of said County, on the 6th day of December, 1871, as Lots No. Eight (8), Nine (9), Eighteen (18), and Nineteen (19), in Block No. Sixty-Seven (67).

"*TO HAVE AND TO HOLD* the same together with the tenements, hereditaments and appurtenances thereunto belonging and appertaining unto the said Azel Meadows, party of the second part, for and during the full term of Twenty-Eight (28) years next ensuing from the 1st day of January, 1920, with the right to the said party of the second part, throughout the period of Twenty-Eight (28) years aforesaid, to make additions and all improvements on the buildings now erected on said lots as he may desire, or rebuild and in all

respects to use and employ said lots of land as if he were the owner thereof in fee simple, throughout the term of Twenty-Eight (28) years, so long as any change made would not decrease the value thereof.

"AND THE PARTY OF THE SECOND PART further agrees to keep said buildings in as good repair as when received and to keep same in a sanitary condition at all times and conform with all laws and regulations of the State, County, and City now in force or hereafter adopted, and not to use said premises for any business whatsoever that may be construed to be a nuisance under the law. Any franchise from the City of Huntington for a switch to and over said leased premises shall be granted to and held in the name of said lessors.

"THE SAID PARTY OF THE SECOND PART yielding and paying therefor unto the said parties of the first part, yearly and every year during the period of Twenty-Eight (28) years aforesaid, the sum of Twelve Hundred ($1200.00) Dollars, payable in monthly installments of One Hundred ($100.00) Dollars each, payable in advance on the 1st day of each month thereafter, for and during the term of Twenty-Eight (28) years, the last payment being due on the 1st day of December, 1947, said payments to be made at the Huntington Banking & Trust Co., of Huntington, West Virginia. $75.00 of said rent to the said Rufus Switzer and $15.00 to said F. F. McCullough.

"THE SAID PARTY OF THE SECOND PART doth hereby covenant and agree to and with the said parties of the first part as follows: viz: to well and truly pay the rent above reserved as above specified, to pay all taxes, assessments, including charges and assessments for streets, sidewalks, sewers or any other kind of improvements or repairs that may at any time during the term of Twenty-Eight (28) years aforesaid, be lawfully levied or assessed on or against said premises or any part thereof, by any public authority.

"THE PARTY OF THE SECOND PART further agrees to keep the buildings on said premises insured in some reliable Fire Insurance Company in the amount equal to ninety (90) percent

of the value of said buildings, and to deliver said insurance policy to the parties of the first part to be held in custody by them, the said insurance shall be renewed and kept in force at all times by the party of the second part, and in case that fire destroys said buildings in part or whole, the insurance received under said policy for said loss shall be applied to the expense of repairing or rebuilding said buildings and should there be a balance remaining after said repairs or rebuilding has been completed, it shall be delivered to the party of the second part, and in case said buildings are destroyed by fire or otherwise, the rent shall continue in force; Said Insurance Policy shall contain a loss payable clause, payable to the parties of the first part, as their interest appears of record.

"And the said taxes, assessments, charges and insurance shall be considered to be and are a part of the annual rental, in addition to the said Twelve Hundred ($1200.00) Dollars, under this lease, and the said parties of the first part in consideration thereof, and of the said annual payments do covenant to and with the said Azel Meadows, that at the expiration of said term of Twenty-Eight (28) years, upon the payment of one dollar, the said lots of land, and all the buildings thereon and franchises there unto belonging, and all privileges, hereditaments and appurtances, then thereon, situate or thereto pertaining or belonging shall pass in fee simple to and the title and absolute ownership there to and thereof, in fee simple be vested in said Azel Meadows, free from any and every lien, encumberance or charge heretofore or hereafter suffered or permitted by the parties of the first part or by their predecessors in title or any or either of them, and that the said parties of the first part, shall and will make, sign, seal, acknowledge for record and deliver to the said Azel Meadows, an apt and proper deed, with covenants of general warranty conveying the said lot of land, together with said privileges, tenements, hereditaments and appurtenances, at the expiration of said term of Twenty-Eight (28) years to the said Azel Meadows, and all such further assurances or assurances of title as may by law be apt and requisite, to vest in the said Azel

Meadows, the title and absolute and unqualified ownership in fee simple in and to said lot of land and the privileges, tenements, hereditaments, and appurtenances, thereunto belonging and affecting, provided that the payment of said rentals, taxes, assessments and charges shall have been made, and the payment of said rentals shall be a condition precedent to the execution and delivery of such deed, or the passing of title to said lots to the said Azel Meadows.

"*AND THE SAID PARTIES OF THE FIRST PART* covenant and agree upon the consideration aforesaid, to and with the said party of the second part, that he shall and may peace*b*ly and quietly enjoy the aforesaid premises, with the said privileges, tenements, hereditaments and appurtenances thereunto belonging for and during the term aforesaid, free from any let or hindrance from any person or persons whatsoever and they covenant to warrant generally the title to the said property and that the same is free and clear of all liens and encumberances of any nature whatsoever.

"*IT IS FURTHER COVENANTED* that upon default of the second party, for a period of 60 days at any one time during the first five years next ensuing or 120 days at any one time thereafter, during the said term of Twenty-Eight (28) years, in the payment of said rent, monthly, when the same shall become due and payable, and in the performance of any of the provisions, covenants or obligations herein provided, to be done by the party of the second part, then the said parties of the first part, may at their option retake said premises and repossess the same and every right, title and interest of said second party in and to said real estate herein described, shall cease and terminate, and the fee simple title remain in said parties of the first part, free from all claim and right of said party of the second part.

"*THIS DEED AND CONTRACT* shall extend and pass to the heirs, executors, administrators, assigns and vendees of all the parties hereto."

Azel Meadows, one of the parties to the original instrument, assigned his interest to Mike Broh, and he in turn

assigned to the defendants, Gideon-Broh Realty Company. Rufus Switzer, in 1933 purchased the interest of F. F. McCullough. Switzer died in March, 1947, approximately nine months before the final payment was due under the instrument, and by his will gave all of his property to the plaintiffs as trustees. Meadows testified at the trial, stating that the instrument was intended to cover a purchase and sale of the property, but was drawn so as to facilitate repossession by the seller in event of default. He further states: "I had very little cash. * * * it was a case of accumulating real estate for very little cash."

The defendant, Louis Salem, acquired a lease from the defendant, The Gideon-Broh Realty Company, dated June 21, 1948, but beginning January 1, 1949, of a portion of the premises upon which he erected a valuable building. Salem testified that Switzer, prior to his death, had informed him that Gideon-Broh were the owners of the property in question. The testimony of both of these witnesses was objected to by the plaintiffs, but the court, sitting in lieu of a jury, overruled the objections and did not make reference thereto in its opinion accompanying the decree.

In determining the character of the instrument in question, we must look to the entire instrument, giving due weight to every word, as well as the subject matter, the parties being presumed to have used words in the instrument which they generally understood.

The line of discrimination between a lease and a sale is sometimes indistinct, and each case must, in a great measure, depend upon its own peculiar circumstances. *Minor* v. *The Pursglove Coal Mining Co.*, 111 W. Va. 28, 161 S. E. 425.

In *Thomas* v. *Johnson*, an Arkansas case, 95 S. W. 468, a contract was entered into whereby the owner leased certain real property to a lessee for a three year term at a specified rental, such contract providing that the lessee

was to pay for all improvements, costs and expenses in-curred on the premises during the three year term, and if at the end of such term the rent had been paid and the other conditions had been performed, the owner and his heirs would make a deed to the real property to the lessee. The instrument contained provisions similar to those in the instant lease relating to reentry for failure to pay the rent as due and to the performance of other covenants contained in the instrument. The appellate court held that the lower court had erred in permitting the introduction of evidence to show that the parties intended the contract to be a sale of the land, stating: "It is contended that an inspection of the whole contract reveals the fact that the real intention of the parties was to make a sale of the land, though that intention was disguised in the garb of a rent contract. In other words that the parties really intended a sale, and that the Court should construe it as a contract for sale and not for a lease. The intention of the parties must, however, be gathered from the language of the contract, and it is manifest that while they intended that the contract should eventually result in a sale of the premises, yet they elected to make it a contract for lease, and to create the relation of landlord and tenant and to stipulate that the relation should continue to subsist between the parties until it should be changed into the relation of vendor and vendee by payment in full of the amounts named. * * *"

The New York appellate court, in *Rogers, et al* v. *Graves, et. al*, 18 N. E. 2d. 626, in determining whether an involved instrument constituted a contract of sale or a lease with the privilege of purchasing at the end of the lease, said: "The recorded instrument is both a valid present lease of the property therein described and a valid executory contract for the sale thereof *in futuro*. * * * The contract of sale is to be performed 'at the end of the term of the lease.' Until that time, the Bank can have or be entitled to possession of the property only under the lease. The instrument does not say that the Bank is ever to have possession thereunder

as vendee. The instrument says that (when the term of the lease is at an end) the Bank shall be entitled to a conveyance of the property upon its payment of the stated purchase price." The first syllabus point in *Shaffer* v. *Calvert Fire Ins. Co.*, 135 W. Va. 153, 62 S. E. 2d. 699, reads as follows: "Parol evidence to contradict, add to, alter, enlarge, or explain a complete written agreement, which is clear and unambiguous, or to vary its legal effect, is inadmissible." In *Hartmann et al.* v. *Windsor Hotel Co., et al.*, 136 W. Va. 681, 68 S. E. 2d. 34, in quoting from *Central Trust Company* v. *Virginia Trust Company*, 120 W. Va. 23, 197 S. E. 12, this Court held: "In the absence of a showing of illegality, fraud, duress, mistake, or insufficiency of consideration, the terms of an unambiguous written agreement may not be varied or contradicted by parol evidence of statements of any of the parties thereto made contemporaneously with or prior to the execution of such agreement."

This instrument, in the opening paragraph, is denominated a "deed", and in the last paragraph, a "deed and contract". The consideration is *"the rents* herein reserved". The party of the second part is "to have and to hold the same * * * for and during the full *term* of Twenty-Eight (28) years * * *.", and "to make additions, improvements or rebuild * * * and in all respects to use and employ said lots of land *as if* he were the owner thereof in fee simple, throughout the *term* of Twenty-Eight (28) years, * * *." It was agreed that the buildings should be kept in good repair, in a sanitary condition, and that the premises were not to be used for any business whatsoever that may be construed to be a nuisance under the law. "Any franchise from the City of Huntington for a switch to and over the *"said leased premises* shall be granted to and held in the name of said *lessors."* Meadows was to pay therefor "yearly and every year during the period of Twenty-Eight (28) years aforesaid, the sum of Twelve Hundred ($1200.00) Dollars, payable in monthly installments of One Hundred ($100.00) Dollars each, * * * for and during the *term* of Twenty-Eight

(28) years, the last payment being due on the 1st day of December, 1947, * * * ." He further agreed and covenanted "to well and truly pay *the rent* above reserved as above specified, * * *." "* * * and in case the said buildings are destroyed by fire or otherwise, *the rent* shall continue in force; * * * ." It was provided that the payment of taxes, assessments, charges and insurance should be considered to be "*a part of the annual rental*". It was further covenanted in the instrument "that upon default of the second party, for a period of 60 days at any one time during the first five years next ensuing or 120 days at any one time thereafter, during the said *term* of Twenty-Eight (28) years, in the payment of said *rent,*" the parties of the first part "may at their option *retake* said premises and *repossess* the same and every right, title and interest of said second party in and to said real estate herein described, shall *cease and terminate,* and the fee simple title *remain in* said parties of the first part, free from all claim and right of said party of the second part." Finally, it was provided that *at the expiration of the term of twenty eight years* "upon the payment of one dollar, the said lots of land * * * *shall pass* in fee simple to and the title and absolute ownership thereto and thereof, in fee simple *be vested* in said Azel Meadows, * * * provided that the payment of said *rentals,* taxes, assessments and charges shall have been made, and the payment of said *rentals shall be a condition precedent* to the execution and delivery of such deed, *or the passing of title* to said lots to the said Azel Meadows." The Gideon-Broh Realty Company, on its check of November 29, 1947, in the sum of $101.00, purporting to be the final monthly payment, plus the $1.00 due under the terms of the agreement, after the word "For" typed this information: "Completion of Rufus Switzer, etal., *Lease agreement* of 12/17/1919." (Italics supplied.)

By the language used in this instrument, we are constrained to hold that it was a lease with an option to purchase twenty-eight years subsequent to its execution, provided the terms of the contract were complied with by

the party of the second part, and, if electing to do so, he paid the sum of one dollar to the parties of the first part at the end of the term. The performance of these obligations was by specific provision of the agreement, made a condition precedent to the passing of title. The relation of landlord and tenant was created between the parties, this relationship to continue for a period of twenty-eight years, but the party of the second part got something more. If he faithfully complied with all the terms of the agreement, and elected to pay the additional sum of one dollar, title would pass to him. The party of the second part did not acquire legal title to this property in 1919, nor did he acquire an equitable "title". It is true that the party of the second part immediately acquired an equitable interest, equitable right or an equitable estate in the property, which, upon the performance by him of certain requirements and the passage of twenty-eight years of time, might ripen into a title.

In one of the leading cases upon the subject, *Barton* v. *Thaw*, 92 Atl. 312, 314, the court, in quoting from previous Pennsylvania cases, said: "An option is not a sale. It is a right of election in the party taking the same to exercise a privilege, and only when that privilege has become exercised by acceptance in the manner specified in the agreement does it become an absolute contract, binding upon both parties. It is simply a contract by which the owner of property agrees with another person that he shall have the right to buy his property at a fixed price within a certain time. By such an agreement he does not sell his land, nor does he at that time enter into an absolute contract to sell and convey, but he does agree to sell something; that is, the right or privilege to buy at the election or option of the party with whom the agreement is made. The optionee under such an agreement takes, not lands, nor even an absolute agreement that he shall have lands conveyed to him, but he does get something of value; that is, the right to call for a conveyance of the lands if he elects to purchase in the manner specified. * * * It is a unilateral agreement containing the terms and condi-

tions upon which the optionor agrees to sell and convey his land not yet ripened into an absolute contract to sell and convey on one side and to purchase and pay on the other."

Upon the determination that the instrument is a lease with an option to purchase, at a time more than twenty-one years and the period of gestation subsequently, it becomes necessary to determine whether the plaintiffs are not required to convey the property to the defendants because the instrument in question violated the rule against perpetuities. In his work, the Rule against Perpetuities, at §230.3, Gray says that: "An option to a tenant for years to purchase the fee, exercisable at a remote time, is bad as violating the Rule against Perpetuities. * * *" Many cases are cited on the question in Note 1 to this section.

The leading case upon this question is *London & S. W. R. Co. v. Gomm*, 20 Ch. D. (C. A.) 562. In that case, the grantee covenanted that he would, upon demand by the grantor, his heirs, executors or assigns, and upon the payment of a stipulated sum, reconvey the property conveyed to the grantee. In a suit for specific performance to enforce the covenant, it was held that the right of the grantor to repurchase the property constituted an equitable interest in the property itself, and since the period for the exercise of such right exceeded the legal limits of the rule against perpetuities, the covenant was void *ab initio*. The court said: "But if it binds the land it creates an equitable interest in the land. * * * It appears to me therefore that this covenant plainly gives the company an interest in the land, and as regards remoteness there is no distinction that I know of, unless the case falls within one of the recognized exceptions, such as charities, between one kind of equitable interest and another kind of equitable interest. In all cases they must take effect as against owners of the land within a prescribed period."

*Starcher Brothers* v. *Duty*, 61 W. Va. 373, 56 S. E. 524, is one of the leading cases in this country. This Court

approved this definition of a perpetuity: "A future limitation, whether executory or by way of remainder, and either of real or personal property, which is not to vest until after the expiration of or will not necessarily vest within the period fixed and prescribed by the law for the creation of future interests, and which is not destructible by the persons for the time being entitled to the property subject to the future limitation." The second point of the syllabus in that case is as follows: "Such an option contract, good for one year, and providing for extending it for another year on payment of a stipulated sum, and containing also a provision that the optionee 'may have this option and agreement so extended from year to year upon the payment of said sum annually as aforesaid,' and extending its provisions to the heirs, assigns, executors and administrators of both parties, is void by the Rule against Perpetuities." The fourth syllabus point of that case is as follows: "Whenever a contract raises an equitable right in property which the obligee can enforce in chancery by a decree for specific performance, such equitable right is subject to the Rule against Perpetuities." The Court, in the body of the opinion, said:

"The mere fact that a contingent interest may be released by the persons in being, and that a good title may thus be made, is not enough to take the case out of the rule. * * *

"This rule against perpetuities is aimed not only against restraints on the alienation of present interests, but is also directed against the creation of future interests in property.* * *"

Referring to the option in the contract there being considered, the Court further stated: "Such being the law of the contract, we hold that it was void and unenforceable from the beginning, and that it was given no vitality by payments made and received for annually extending it." The *Starcher Brothers* case was approved in *Woodall et al v. Bruen et al.*, 76 W. Va. 193, 85 S. E. 170, a case involving an option to repurchase minerals obtained in a deed. The option was held to be void as a violation of

the rule against perpetuities, and the Court said: "* * * In the opinion of other jurists, the rule goes further and condemns limitations that clog alienation and unduly restrain it for an unreasonable length of time, without absolute prevention thereof. So interpreted, it forbids practically all executory limitations, whether by will or deed, that do not vest within the time arbitrarily prescribed as being reasonable, a life or lives in being and twenty-one years and ten months; and, even though the holders of the respective rights have it in their power to combine them and put the property on the market, the restraint upon alienation is deemed to be incompatible with the welfare of society in general.* * *" In the *Bruen* case, however, as evidenced by the third syllabus point, it was held that: "An option of purchase is a mere personal right, not an interest in the optioned land." This ruling was specifically overruled in *West Virginia-Pittsburgh Coal Co.* v. *Strong*, 129 W. Va. 832, 42 S. E. 2d. 46, decided in 1947, the Court stating: "* * * However, evidently overlooking the fact that the rule against perpetuities is a rule of property and not a principle governing the law of contracts, the third syllabus point in the *Bruen* case reads as follows: 'An option of purchase is a mere personal right, not an interest in the optioned land.' This statement does not conform to the holding in the *Gomm* case nor in the *Starcher Brothers* case."

In *West Virginia-Pittsburgh Coal Co.* v. *Strong, supra,* a declaratory judgment proceeding was brought to determine the validity of a covenant in a deed. The facts show that a deed conveyed all the coal underlying a 127.4 acre tract and likewise gave the grantee the right to enter upon the surface for the purpose of mining the coal and using the surface in any way that would facilitate its removal, except for the surface above the level of the Pittsburgh No. 8 vein of coal. As to the right to use the surface above this vein, the deed provided that before the same should be used or occupied, the grantee should pay for the same at the rate of $100.00 per acre, and that when said surface should be taken and paid for, the

grantor, his heirs or assigns, would execute and deliver a deed to the grantee, therefor, in fee simple, free from all liens and encumbrances. It was contended that the covenant providing for the giving of a deed in the future to the surface above the Pittsburgh No. 8 vein violated the rule against perpetuities. The Court, in holding that the covenant in question was tantamount to an option to buy, said: "The right to use the surface above that seam, however, did not then vest. There was a further condition to be performed on the part of the coal owner before he would acquire the right to use the surface above the named seam, i. e., the payment of $100.00 per acre for the surface intended to be so used and occupied. It is to be noted that the payment, according to the plainly expressed provision of the deed, is made a condition precedent to the right to the use of that surface and that it is to be followed by a deed conveying the fee simple from the land owner to the owner of the coal. This provision created no contractual obligation binding the owner of the coal unconditionally. It was a right to be exercised or ignored at the election of the owner of the coal who was not bound by its terms unless he chose to occupy or use the surface above the Pittsburgh No. 8 seam. By its terms the landowner, however, was bound, so that in this particular aspect the contract was unilateral. That being so, we are of the opinion that it is to be treated as an option to buy and that the law governing such instruments constitutes the principles that control this aspect of the plaintiff's case." The second syllabus point of the *Strong* case is as follows: "The provisions of an instrument that purport to grant the right to purchase real estate at any time in the future upon terms otherwise binding, are void as constituting a violation of the rule against perpetuities." The *Strong* case specifically approves the rule laid down in the *Starcher Brothers* and *Bruen* cases, with the exception of the third syllabus point in the *Bruen* case, as heretofore stated.

In *Skeen et al.* v. *Clinchfield Coal Corp.*, a Virginia case, 137 Va. 397, 119 S. E. 89, the court said, speaking of the

rule against perpetuities: "This rule applies to options. It is true that the option here is not an option to buy, but an option to sell. The grantee is not only given the exclusive right to buy, but he is bound to buy, whenever the grantor or his assigns indicate a desire to sell. * * * It has been repeatedly held that option contracts which do not, necessarily expire within the period of limitation fixed by the rule against perpetuity are within the ban of that rule and cannot be enforced by either party. * * *" The Court said further in the *Skeen* case, in quoting from *Barton* v. *Thaw, supra,* that : "* * * In no proper legal sense can a mere privilege of exercising a future right to purchase be deemed a present vested interest in land. The optionees may never exercise their option, and failing to do so, they would never acquire a vested interest in the land. * * *" The Court said, citing *Starcher Brothers, supra,* that: "* * * It has been repeatedly held that option contracts which do not necessarily expire within the period of limitation fixed by the rule against perpetuity are within the ban of that rule and cannot be enforced by either party. * * *" In *Barton* v. *Thaw, supra,* one of the leading authorities for the holding that an option contract contained in a deed is invalid, the court said: "In order that an option of this kind, made without reference to lives in being, may have a binding effect upon the land, an acceptance of it must be required by its terms within a period of 21 years from the date of its creation, otherwise it is void ab initio." The court further said that:

"* * * Except for the absence of a limit as to time of acceptance, the option to purchase this land constituted a substantial interest in the land which could be conveyed. * * *

"But it did not constitute such a vested interest in the land as can escape the rule against perpetuities. To 'vest' means to give an immediate fixed right of present or future enjoyment. * * *"

In the English case of *Woodall* v. *Clifton,* (1905), 2 Ch. 257, the court held that the right given a lessee in a 99

year lease to purchase at any time during the life of the lease was void because it violated the rule against perpetuities. To the same effect is *Worthing Corp.* v. *Heather,* (1906), 2 Ch. 532. In the *Worthing* case, the court refused to decree specific performance of a provision in a 30 year lease giving the lessee the option at any time during the term to purchase the fee for a stipulated price. The court said: "The contract is not denied. The defenses to it are purely legal. The first defense, that, so far as it is an action for specific performance, it cannot be enforced because in equity, in which court alone specific performance can be granted, it creates an interest in the land, and that interest is void as infringing the Rule against Perpetuities."

We have, for the purpose of emphasis, quoted several phrases from the instrument here under consideration, and italicized certain words. The record shows that the two attorneys who represented Mr. Meadows in the preparation of this agreement, as well as Switzer himself, were competent attorneys. It is obvious, therefore, that this instrument is not a deed of conveyance, and was not so intended by those who became parties to it. It is equally apparent that it is not a contract of purchase and sale. It is what it purports to be and what it is designated as being by the language used in almost every sentence. It is a contract of lease with the right in Meadows to purchase the property at the end of twenty-eight years. It is a unilateral agreement containing the terms and conditions upon which Switzer and McCullough would sell and convey their land to Meadows, but not yet ripened into an absolute contract to sell and convey on one side, and to purchase and pay on the other. Except for the excessive limit as to the time of acceptance, the option to purchase constituted a substantial interest in the land which could have been conveyed, but it did not constitute such a vested interest in the land as would escape the rule against perpetuities. The title to this property did not move from Switzer and McCullough to Meadows in 1919. Unless certain contingencies happened, the title

would never be removed from the owners. The fact that the final act which would vest the title in Meadows constituted a nominal payment of the sum of one dollar does not alter the case. There were many other requirements to be met by Meadows during the twenty-eight year period, all of which were specifically made a part of the consideration for his right at the end of the term to secure title to the land in addition to the payment of the sum of one dollar. The instrument does not require Meadows to elect to purchase at the end of the twenty-eight year period, but it gives the opportunity to do so.

This State adheres to common law principles regarding the rule against perpetuities, and we find, with two exceptions, no conflict with the three West Virginia cases, which have been heretofore discussed, other than decisions from states which have by statute amended the rule. One of the exceptions is *Hollander* v. *Central Metal and Supply Co.,* 71 Atl. 442, (Md.), and the other is *Koegh* v. *Peck,* 147 N. E. 266, (Ill.). In *Skeen* v. *Clinchfield Coal Corp., supra,* the Virginia court had this to say with reference to the *Hollander* case:

> "In a note to this case of Barton v. Thaw, Ann. Cas. 1916D, 577, there is a further citation of the authorities to support the general rule that:
>
>> 'An option to purchase land which may be exercised beyond the period prescribed by the rule against perpetuities is void as a violation of that rule.'
>
> "This note cites only one case which is out of line with the decision in Barton v. Thaw, and that is the case of Hollander v. Central Metal & Supply Co., 109 Md. 131, 71 Atl. 442, 23 L.R.A. (N.S.) 1135, in which the Maryland court refused to follow the general rule, and sustained the option because it was contained in a lease like many others then in force and always theretofore considered legal in that State, and the court thought

it essential to sustain the option and thus avoid disturbance of land titles in that jurisdiction."

The Illinois court in the *Koegh* case, decided subsequent to *Skeen* v. *Clinchfield Coal Corp., supra,* after discussing many decisions in other jurisdictions, which undoubtedly constituted the weight of authority, said: "It is to be noted that in none of the cases cited was the option contract contained in a lease and that in each of the cases the opinion was based upon the idea that the option attempted to give to the optionee a contingent interest in real estate. In this state no title, legal or equitable, is granted, and no interest is created in the holder of the option by an option agreement." If the court was correct in stating that in Illinois no interest is created in land in the holder of an option to purchase it, the decision was correct. The rule against perpetuities is a rule of property and does not affect a personal contract.

It may be true that in the cases cited in support of our conclusion the options held invalid were contained in instruments other than leases, with the possible exception of *Eastman Marble Co.* v. *Vermont Marble Co.,* (Mass.), 128 N. E. 177. In that case, a suit in equity was brought to obtain specific performance of a convenant contained in a contract, that the defendant at any time within twenty-five years would convey certain property for a specified price, plus interest and taxes. The court said: "We think that this agreement, so far as concerns a right to specific performance, was void as being in contravention of one or both of these rules. The agreement purports to create an equitable interest in land. It is not a mere option. It is in the form of mutual covenants. It purports to create an absolute right to be exercised within 25 years and imposes an immediate restraint upon alienation by the owner for a like period. It is in that respect unenforceable under the rule. * * *" There is, however, no difference in principle between an option in a lease that permits or may permit the remote vesting of title to real property and an option contained in any other document which would produce the same result. The

original purpose of the rule was to prevent property from being taken out of commerce by the remote vesting of title. The restraints thus placed upon the owner of property were for reasons of public policy, and such restraints were placed upon the owner where his rights conflicted with those of the public generally. If this cardinal principle of the rule could be defeated by using a particular type of instrument to accomplish the purpose, whereas the use of some other device would not suffice, it is inconceivable that the rule would have survived in our law through approximately three centuries.

In Black's Law Dictionary, Third Edition, we find this definition of a vested interest: "A present right or title to a thing, which carries with it an existing right of alienation, even though the right to possession or enjoyment may be postponed to some uncertain time in the future, as distinguished from a future right, which may never materialize or ripen into title, and it matters not how long or for what length of time the future possession or right of enjoyment may be postponed, if the present right exists to alienate and pass title. * * *"

*Bennett* v. *Bennett*, 92 W. Va. 391, 115 S. E. 436, does not support the contentions of the defendants, although it is true that the plaintiff established her right to a trust in real property and secured legal title thereto some thirty years subsequent to the time when she maintained that such right arose and title had apparently remained in another during that time. The Court specifically held that the contract was not void and unenforceable as violating the rule against perpetuities because "we think that plaintiff's interest in the land became vested and certain when the property was purchased at the trustees sale."

Simes, in his "Law of Future Interests", §512; Leach in 51 Harvard Law Review 660; Abbott in 27 Yale Law Journal, 878; and perhaps others, suggest that options in leases which do not vest within the period of the rule should be accepted upon the ground that to do otherwise

would retard rather than promote the development of the property. Leach says: "The period of lives in being and 21 years, which works admirable with regard to gift transactions for family purposes, has no significance in the world of commercial affairs." Abbott admits that such an option certainly conflicts with the letter of the rule.

The three decisions of this Court, which have heretofore been discussed, in which options were held invalid as violating the rule, dealt with options involving commercial transactions. To adopt the rule proposed by Simes, and others, would mean that the courts would have to determine in each case whether there was a "commercial aspect" involved in the transaction, and such a procedure would hopelessly confuse the courts, the legal profession, and those engaged in commercial enterprises.

It is further contended that the rights of the defendants to acquire title beyond the period of the rule against perpetuities is valid under the decisions of this Court, holding a perpetual covenant for the renewal of a lease to be good. This Court has so held in *Todd* v. *Mfgrs. Light & Heat Co.,* 90 W. Va. 40, 110 S. E. 446, and in prior cases cited therein. This contention was advanced in the *Starcher Brothers* case, but this Court held that the authorities relied upon were inapplicable.

Gray, at § 230.2, states: "That covenants for the renewal of leases are not open to the objection of remoteness, and that this is an exception to the Rule against Perpetuities, seems now to be recognized as law. * * *" Gray quotes from *Woodall* v. *Clifton, supra,* that it is necessary to "treat these covenants to renew as exceptions to the general rule [against perpetuities]—exceptions for which it is very difficult to find a logical justification, but exceptions which have been probably recognized because they were in existence long before the rule had been developed."

We have determined that the instrument under consideration was a lease with an option to purchase, and the

decision of this Court is based upon that finding. While we do not say that the same result would obtain if the instrument were found to be a contract of purchase and sale, we will briefly discuss that phase of the case.

In Gray, Rule against Perpetuities, Fourth Edition, §330, it is said: "Where, however, a contract raises an equitable right in property which the obligee can enforce in chancery by a decree for specific performance, such equitable right is subject to the Rule against Perpetuities. * * *" In footnote 2 to §330, we find this statement: "An agreement for sale is not void because it does not expressly limit the time within which the agreement is to be carried out. The vendee has an equitable interest, subject only to the condition that the price shall be paid, which must be done within a reasonable time, and that would be less than twenty-one years. Re Doyle's Estate [1907] 1 I. R. 204. But an agreement which gives the vendee the right to call for a conveyance only on the fulfillment of a condition which may be too remote, is unenforceable in equity. * * * And it seems that if the right to a conveyance were postponed to a remote certain date, the agreement would likewise be invalid, even though the price had been paid and there was no unfulfilled condition except the lapse of time."

In addition to the authorities heretofore cited, the following cases support the above statement of Gray: *Horticultural Development Co.* v. *Lark,* 224 Ala. 193, 139 So. 229; *Beverlin* v. *First National Bank,* 151 Kans. 307, 98 Pac. 2d. 200; *In Re Koellhoffer,* 20 N. J. Misc. 139, 25 A. 2d. 638; and *Hutchings* v. *Mosses,* 3 W. W. R. (N. S.) 446. The Court in *Barton* v. *Thaw, supra,* in discussing this question quoted with approval the following from *London & S. W. R. Co.* v. *Gomm, supra:* "The right to call for a conveyance of the land is an equitable interest or an equitable estate * * * it was suggested that the rule has no application to any case of contract, but in my opinion the mode in which

the interest was created is immaterial. Whether it is by devise or voluntary gift or contract can make no difference."

The defendants contend finally that the plaintiffs are estopped to invoke the rule against perpetuities, inasmuch as there has been full compliance by the defendants with the terms of the instrument. The Court in the *Starcher Brothers* case said: "The contract, therefore, is illegal, and was void from its very inception, and everything done by either of the parties designed to carry the contract into effect which is auxiliary thereto must be considered as unauthorized and inoperative. * * *", in deciding that if the rule was violated, the doctrine of estoppel was ineffective. In the *Barton* case, the Pennsylvania court, quoting from Gray on the Rule against Perpetuities, (2d Ed.) §629, said: "The rule against perpetuities is not a rule of construction, but a peremptory command of law. It is not, like a rule of construction, a test, more or less artificial, to determine intention. Its object is to defeat intention. Therefore every provision in a will or settlement is to be construed as if the rule did not exist, and then to the provision so construed the rule is to be remorselessly applied."

The rule against perpetuities has, by common law, become an established part of the public policy of this State, and may not be violated even by the consent of all parties concerned. This State remains among the large majority which still follows common law principles as regards the rule. Many of the decisions of other states have adopted the rule established in 1907 in the *Starcher Brothers* case, and it has been widely quoted. In several jurisdictions, by statutory enactment, the rule has been abolished or amended. The Legislature of this State has not seen fit so to do, although it has not hesitated, when it believed that the public policy of this State required it, to change other well established common law rules of property, such as the rule in Shelley's case, etc. If the rule against perpetuities has outlived its usefulness in this jurisdiction, the people, by their elected representatives in the Legis-

lature, have the right under the Constitution of this State to abolish it, or otherwise change its restrictive provisions to correspond with their desires. Until that is done, this Court is not inclined to overrule the three cases heretofore mentioned, specifically approving the rule, nor to depart from the holding of the great majority of the courts of this country, England, Ireland and Canada, which undoubtedly constitute the great weight of authority in the English speaking world.

The decree of the Circuit Court of Cabell County that the plaintiffs are not liable to any of the defendants, either at law or in equity, under any of the terms and provisions of the written instrument, dated the 27th day of December, 1919, is affirmed.

*Affirmed.*

Lovins, Judge, dissenting:

I respectfully dissent from the Court's opinion in this case.

The point of departure in my views from those expressed in the Court's opinion rests on the proposition that the agreement and deed made by Switzer and wife, McCullough and wife to Meadows, dated the 27th day of December, 1919, was a contract of sale and purchase, with a proviso that at the end of twenty-eight years, Meadows was to pay one dollar and acquire the legal title. Clearly, the payments of $100.00 each month were payments of the purchase price by way of monthly installments.

The rule against perpetuities has been subjected to many subtleties and refinements. I think it is necessary to set forth the rule with some precision as defined by this Court: * * * " 'every executory limitation, in order to be valid, shall be so limited that it must necessarily vest, if at all, within a life or lives in being, ten months and twenty-one years thereafter, the period of gestation being allowed

only in those cases in which it is a factor.' " Point 5 of the syllabus, *Brookover* v. *Grimm*, 118 W. Va. 227, 190 S. E. 697, 699.

The Court, in its opinion, treats the instrument executed by Switzer and his co-owners to Meadows as a lease coupled with an option to acquire the fee simple title. The cases of *Starcher Bros.* v. *Jeff Duty*, 61 W. Va. 373, 56 S. E. 524; *Woodall* v. *Bruen*, 76 W. Va. 193, 85 S. E. 170; *West Virginia-Pittsburgh Coal Co.* v. *Strong*, 129 W. Va. 832, 42 S. E. 2d 46, are cited as the authorities for the conclusion of the Court.

The case of *Starcher Bros.* v. *Jeff Duty, supra,* involved an option given for a consideration to purchase a certain tract of land owned by Duty at the price of $6.00 per acre, valid for one year. The contract contained a proviso that the Starcher Brothers could, by the payment of $10.00, extend the option for a period of one year, from April 5, 1903, and with the further proviso that Starcher Brothers could extend the option from year to year, upon the payment of $10.00 annually. It was agreed that the terms of the agreement should bind the heirs, assigns, executors and administrators of Starcher Brothers and Duty.

In the case of *Woodall* v. *Bruen, supra,* the writings there considered were two deeds from and by Bruen to Burdette, conveying 66.12 acres; the other by Bruen, conveying 210.36 acres to Woodall. The heirs of Bruen granted the options retained in those deeds to the United Fuel Gas Company. The material part of the deed to Burdette, executed by Bruen, contained language purportedly giving to Bruen, his heirs or assigns, the right at any time after date of the deed to purchase from Burdette, his heirs or assigns, for the sum of $66.12, * * * " 'the right to dig, mine, remove and ship, on and from the premises, all the Limestone, Coal, Iron, or other minerals which may be in and upon said Lot. No. 28, [the 66.12 acre tract] together with such rights of way, through, over, and upon said Lot No. 28, as may be necessary to the convenient digging, mining, removing and shipping of said Limestone, Coal,

Iron and other minerals, reserving only so much thereof as may be used for domestic purposes.'" The deed to Woodall was of a similar import, but contained additional language with respect to the re-purchase, as follows: "'The covenant respecting a reconveyance of these premises as before mentioned is to be null and void after ninety-nine years.'"

In the case of *Coal Company* v. *Strong, supra,* there had been severance of underlying coal from the surface, by deed bearing date May 31, 1904, which had been executed by the former owner of the land to a remote grantor of the plaintiff coal company. That deed contained the following provision: "'Together with the right to enter upon and under said land with employees, animals and machinery at convenient point and points, and to mine, dig, excavate and remove all said coal, and to remove and convey from, upon, under and through, said land all said coal and the coal from other land and lands and to make and maintain on said land all necessary and convenient structures, roads, ways, and tramways, railroads, switches, excavations, air-shafts, drains and openings, for such mining, removal and conveying of all coal aforesaid, with the exclusive use of all such rights of way and privileges aforesaid, including right to deposit mine refuse on said land and waiving all claims for injury or damage done by such mining and removal of coal aforesaid and use of such privileges.'"

"'All of the surface of the said land occupied or used by the said parties of the second part, or their assigns, above the level of the Pittsburg—No. 8 vein of coal, for their operations herein shall be paid for before the same shall be so used, or occupied, at the rate of One Hundred Dollars per acre, and said party of the first part, his heirs or assigns shall execute and deliver a deed therefor, in fee simple, free from liens and incumbrances, when said surface shall be taken and paid for.'"

A casual examination of the opinions in the cases of *Starcher Bros.* v. *Jeff Duty, supra; Woodall* v. *Bruen, supra,*

and *Coal Co.* v. *Strong, supra,* readily discloses that Starcher Brothers, the grantees of Bruen and the Coal Company were strangers to the titles of the lands involved in those three cases.

In the instant case, I think Meadows and his grantees took a present equitable estate in the four lots covered by the agreement, and were not strangers to the title as were the parties in the Starcher Brothers, Woodall and Pittsburgh Coal Company cases. No title, equitable or legal, had vested in Starcher Brothers, Bruen, or the West Virginia-Pittsburgh Coal Company. I am therefore of the opinion that those three cases are wholly inapplicable and useless as precedents supporting the conclusion in the instant case.

"An agreement for sale is not void because it does not limit the time within which the agreement is to be carried out; the vendee has an immediate equitable interest." Note 1, The Rule Against Perpetuities, Gray, Third Edition, page 260; *In Re* Doyle's Estate, (1907) 1 Ir. 204, also supports this proposition. See also the case of *Bennett* v. *Bennett,* 92 W. Va. 391, 115 S. E. 436, wherein it was held that an estate in the proceeds of the sale of the land vested at the time the legal title was sold and purchased by the defendant.

It may be urged that an equitable estate is not present here. The case of *Maudru* v. *Humphreys,* 83 W. Va. 307, 98 S. E. 259, is authority for the proposition that an equitable estate passes by virtue of a valid enforceable contract for the sale of land to the purchaser before such purchaser acquires legal title. In the *Maudru* case, it was determined that the purchaser of improved property sustained the loss where the improvement on the land was destroyed by fire, without insurance, prior to the passing of the legal title.

I think the case of *Bennett* v. *Bennett, supra,* embodies the principle applicable and controlling to this case. The first point of the syllabus reads as follows: "A proposition is made in writing to the husband proposing the purchase of his wife's separate real estate at a trustee's sale, then

about to be made, immediately following personal negotiations with the wife leading to the proposition in writing, wherein proponent agrees to buy the land at the trustee's sale, and rent the same to the husband, and when the land should be resold by him to divide equally the profits with the husband; which proposition is accepted by husband and wife, and in pursuance thereof the land is bought in by the proponent at the trustee's sale and the deed made to him. An express trust is thereby created in favor of the wife for one half of the net profits derived from a subsequent sale of the land." The seventh point of the syllabus, in the *Bennett case,* reads as follows: "The contract set out in the first point of the syllabus is not void and unenforceable as violating the rule against perpetuities."

Under the contract between the parties in *Bennett v. Bennett, supra,* this Court held that, "Although no time for resale was agreed upon, the law would not permit defendant to prevent a fruition of the contract by indefinite and eternal postponement." And, likewise incorporated in the opinion is the following quotation from 21 R. C. L. page 290, sec. 12: " 'The rule against perpetuities has reference to the time within which the title vests, and has nothing to do with the postponement of the enjoyment.' "

In *Crowell v. Brim,* (Ga.) 12 S. E. 2d 585, the Court had before it an agreement very similar to the one here considered. It was held that the contract was a contract of purchase and not a lease. In *Gibson v. Alford* (Ga.) 132 S. E. 442, the agreement there considered in its salient provisions, was similar to that here considered. The Court held that the agreement was one of bargain and sale and not one of lease.

By its very terms, the rule against perpetuities applies to future contingent estates and does not apply to an estate already vested. See 41 Am. Jur., Perpetuities and Restraints on Alienation, §29. The rule against perpetuities relates to the commencement and vesting of estates and is not concerned with the duration. 2 Tiffany on Real

Property, Third Edition, Section 397. If an estate does not vest within the arbitrary limits fixed by the rule, though it be equitable, the rule applies. See 70 C. J. S., Perpetuities, §11 and §12. The converse is necessarily true.

For a discussion of the effect of a lease containing a provision that on certain conditions, the lessee was entitled to the fee simple title, see *In Re Murphy's Estate* (Wash.) 71 P. 2d 6.

In the instant case, the equitable estate under the provisions of the contract of Switzer, his co-owners and Meadows separates the equitable beneficial ownership of the property from the fee simple title and vests such ownership in Meadows, which vesting of the equitable title renders the rule against perpetuities inapplicable. *Post v. Bailey*, 110 W. Va. 504, 159 S. E. 524.

Though the subjects of restraint on alienation and perpetuities are sometimes discussed together and erroneous expressions have been made with reference thereto, they are not the same. Gray, The Rule Against Perpetuities, Fourth Edition, §278. The contract between Switzer, his co-owners and Meadows does not involve any restraint on alienation. As to a differentiation between the rule against perpetuities and the principle denying the validity of restraints on alienation, see 3 Walsh, Commentaries Law of Real Property, §336.

Strange to say, a covenant to lease land in perpetuity, upon the payment of stipulated annual rental, does not violate the rule against perpetuities. *Thaw v. Gaffney*, 75 W. Va. 229, 83 S. E. 983. Judge Williams, speaking for the Court, used the following language in the body of the opinion: "A covenant to renew perpetually does not violate the rule against perpetuities. The landlord may convey his land notwithstanding his covenant, but the covenant passes with the land, and is binding on his assignee." See *Bancroft v. Maine Sanatorium Ass'n.* (Me.) 109 Atl. 585, 586: "The test as to whether the rule against perpetuities is

being violated is the time of vesting and not the period of continuance."

Where the legal title is vested within the time prescribed by the rule, though the equitable title may be retained by the grantor, the disposition is not obnoxious to the rule against perpetuities. And, if the equitable title is vested within the time provided in the rule against perpetuities the rule likewise does not apply.

In the cases of *London & S. W. R. Co.* v. *Gomm,* 20 Ch. D. (C. A.) 562; *Starcher Bros.* v. *Jeff Duty, supra,* and *Barton* v. *Thaw,* (Pa.) 92 Atl. 312, options in perpetuity were considered. No title, equitable or legal, had theretofore vested in the grantees. Those cases are likewise inapplicable to the instant case. See *Eastman Marble Co.* v. *Vermont Marble Co.* (Mass.) 128 N. E. 177; The Rule Against Perpetuities, Gray, Fourth Edition, page 365.

The proposition is unassailable that where there is a present vesting of a legal or equitable estate in land by an agreement, such as the one here considered, the rule against perpetuities does not bar a subsequent acquisition of the remaining estate, legal or equitable, as the case may be. See Annotation 110 A. L. R. page 1450, as to the distinction under the rule against perpetuities between the time of vesting the estate and time fixed for enjoyment or possession.

See Minor on Real Property, Second Edition, Ribble, Vol. 1, §807, *et seq.,* for an interesting and instructive discussion of the rule against perpetuities.

It is very unlikely that astute business and professional men would agree to sell a valuable parcel of real estate for the sum of one dollar, especially when such real estate brings in an annual rental of $600.00. The only condition postponed for 28 years, upon which legal title was to vest, was the payment of one dollar. Clearly, the various installment payments, starting at the inception of the agreement and continuing throughout the 28 year period were the payments of the purchase price for the four lots. I do

not give any force or effect to the inept language of the agreement characterizing the paper or writing here considered as a lease and the monthly payments as rentals.

In my opinion, the contract between Switzer, his co-owners and Meadows is bilateral rather than unilateral. Switzer and his co-owners were required to execute and deliver a deed and Meadows was required to pay the annual rentals, all taxes and assessments levied against the premises during the term of twenty-eight years, to insure the buildings on the premises against damages by fire and to perform other covenants. Clearly, the parties to the contract here considered were reciprocally bound to fulfill obligations to each other. I look at the entire instrument from its four corners, and considering the instrument in that manner, to me, the deed and agreement provided for the sale and purchase of land, the purchase price to be paid in monthly installments over a period of twenty-eight years; and the retention of the legal title until all payments were made.

The agreement provided that in the event of destruction of the buildings, that the insurance effectuated and paid for by Meadows should be used to repair and rebuild the buildings and that if any balance remained after the repairs or rebuilding had been done, that such balance should go to Meadows. It is also provided in the deed and agreement that though the buildings on the premises may be destroyed by fire or otherwise, the rent (payments) should continue in force.

Other significant provisions in the agreement are to the effect that Meadows could use the land as if he were the owner thereof in fee simple; that he could build buildings and make improvements on the land. These provisions contemplated that Meadows was invested with the beneficial and equitable ownership of the land upon the signing and delivery of the deed and agreement.

Though the rule against perpetuities is not one of construction of a written contract, the intent of the parties to

such contract should be ascertained and when ascertained, if the intent violates such rule, it will not be enforced. *Prichard* v. *Prichard,* 91 W. Va. 398, 113 S. E. 256.

It is well established in this jurisdiction that the construction of a writing is for the purpose of determining the real intention of the parties. This intention must be gathered from an examination of the whole instrument and not from isolated words or phrases. *Wetterwald* v. *Woodall,* 83 W. Va. 647, 98 S. E. 890; *Curtis* v. *Meadows,* 84 W. Va. 94, 99 S. E. 286; *Development Co.* v. *Gas Co.,* 121 W. Va. 284, 3 S. E. 2d 217.

I would reverse the decree of the Circuit Court of Cabell County and hold that the agreement and deed are not obnoxious to the rule against perpetuities.

I am authorized to say that Judge Given concurs in this opinion. `