NICOLINA MICHIENZI GRECO, INDIVIDUALLY AND AS EXECUTRIX OF THE ESTATE OF DOMINIC GRECO, *et al.*

*v.*

MEADOW RIVER COAL AND LAND COMPANY, *a Corporation, et al.*

(No. 11080)

Submitted January 26, 1960.  Decided March 8, 1960.

154

*Mahan, White, Higgins & Graney, Stanley Higgins, Jr.,* for appellants.

*J. W. Maxwell, Joseph Luchini,* for appellees.

GIVEN, JUDGE:

This appeal was granted to a decree entered by the Circuit Court of Greenbrier County, in a proceeding wherein two suits, prosecuted for the purpose of having specific performance of covenants contained in two deeds, were consolidated. The circuit court decreed specific performance of the covenants, holding invalid, in part, a deed executed by the defendant, Meadow River Coal and Land Company, hereinafter referred to as Meadow River, to defendants, K. A. Barnett and R. W. Barnett, subsequent to the date of the deeds containing the covenants. One of such suits

was instituted by Nicolina Michienzi Greco, against Meadow River, K. A. Barnett and R. W. Barnett. The other suit was instituted by Nicolina Michienzi Greco, individually and as executrix of the estate of Dominic Greco, and Vincent Greco, against the same defendants.

By deed dated June 10, 1937, Meadow River conveyed to Nicolina Michienzi Greco lots 11 and 12 of a subdivision owned by Meadow River. The particular description contained in the deed was by metes and bounds, revealing that the entire frontage of the two lots conveyed ran with the easterly right of way line of the public highway, referred to as United States Route No. 60, or "The Midland Trail". The other deed, dated September 4, 1937, was executed by Meadow River to Dominic Greco, and conveyed lots 13 and 14 of the same subdivision, also described particularly by metes and bounds, revealing that the front lines of the two lots were also coextensive with the easterly line of the public highway. The two deeds were duly recorded soon after their execution and delivery.

The deeds contained covenants to the same effect, except as to the names of the grantees, as follows: "It is further understood and agreed that if the said State Road Commission changes the present location of the Midland Trail westerly, to the location tentatively agreed upon prior to the date of this deed, as is evidenced by its previous survey and location stakes along the eastern side of the N. F. & G. R. R. right-of-way, and by its exploratory work at the river, on the Hayslett property; thence the said The Meadow River Coal and Land Company agrees, without further cost, to convey to the said Domenick Greco, a general warranty deed, subject to the reservations herein noted, to the strip of land lying between the property herein conveyed and the eastern boundary line of the new right-of-way of the said Midland Trail".

By deed dated September 25, 1950, Meadow River conveyed to defendants K. A. Barnett and R. W. Bar-

nett the surface of a parcel of land described by metes and bounds, containing 0.79 of an acre, and which included the land here in controversy, and which is contended by appellees to be situated between the front lines of the four lots conveyed by the two Greco deeds, and the right of way line of the re-located public way, United States Route No. 60.

The State, by the state road commissioner, on the tenth day of June, 1953, instituted a proceeding in the Circuit Court of Greenbrier County against K. A. Barnett, R. W. Barnett, and others, for the purpose of acquiring an easement over the 0.79 of an acre conveyed by the deed of September 25, 1950, for the purpose of "constructing * * * altering and otherwise improving and maintaining" the state road, and which included the land here involved. By judgment entered in the proceeding on July 28, 1953, an "easement" over and through the parcel of land was ordered "vested" in the State of West Virginia. Neither Meadow River nor the Grecos were parties to the proceeding in eminent domain.

Depositions were taken, from which it appears that at the time of the execution of the deeds to Grecos, the state road commissioner had surveyed, platted, located and staked lines for the proposed new or changed location of Route 60, as it passed in front of lots 11, 12, 13 and 14, and that the new location was westerly from such lots. The old way curved to the right, as one traveled north, as it passed the Greco lots, the curve being away from the Nicholas, Fayette and Greenbrier railroad right of way. The proposed change would have located the public way westerly from the Greco lots, adjacent to and parallel with the railroad right of way, eliminating the curve in the public way. The change, if made, would leave an area, part of the 0.79 of an acre conveyed to Barnetts, between the westerly line of the old public way and the easterly line of the new public way. Extension of the northerly line of lot 14 and the southerly line of lot 11 of the Greco property to the railroad right of way would

include approximately one half of the 0.79 of an acre. That area, though included within the description contained in the pleadings in the eminent domain proceeding, was not included in the description of the proposed new way at the time of the execution of the Greco deeds.

Subsequent to the entry of the final order in the eminent domain proceeding, the state road commissioner improved the public way by grading and paving a portion of the newly acquired way along and next to the railroad right of way, thus leaving a part of the 0.79 of an acre and the old public road right of way, between the front lines of the Greco lots and the publicly traveled portion of U. S. Route No. 60. No order of abandonment of the old public way was entered by the state road commissioner, but the former right of way engineer of the state road commission for Greenbrier County, who had charge of the re-location, and who testified on behalf of appellants, testified to the effect that the old way was retained "To provide access for abutting properties on the old right-of-way and to be used as storage facilities or material equipment for the State Road Commission". Subsequently, the old public way, at each point of its intersection with the new public traveled way, was improved in such manner as to afford access to the new public traveled way, to owners of properties abutting on old Route No. 60, including the owners of the Greco lots. Though it is disputed, apparently, part of the old public way and the part of the 0.79 of an acre here involved which is situated between the new way and the front line of the Greco lots, are sometimes used by the state road commission for storage of its equipment. The old roadway is no longer used for public travel. There can be no doubt that a part of the area included within the 0.79 of an acre is situated between the "eastern boundary line of the new right-of-way of the said Midland Trail", as surveyed and located prior to the time of the execution of the Greco deeds, and the old public way which

existed along the entire frontage of the Greco lots. The area here involved, if the old way is included, is of an average width of approximately seventy five feet.

The pertinent findings of the circuit court were that "* * * since the execution of said deeds described in the bills of complaint and before the institution of these suits, the said State Road Commission has changed the location of said Midland Trail as agreed upon before the execution of said deeds, to a point and upon the lands described in said State Road Commission Map, dated as aforesaid and filed as exhibits Nos. 1, 2, and 3, as aforesaid.

"And now the Court doth further find that there is a boundary of land lying between the lots of the plaintiffs, to-wit, lots Nos. 11, 12, 13 and 14, as described in their respective deeds and bills of complaint and the eastern boundary line of the new location of said Midland Trail, agreed upon prior to the date of the respective deeds to the plaintiffs as aforesaid, and described in the covenants in the respective deeds, sought to be enforced herein * * *". The findings, we think, are fully supported by the evidence.

The prayers in the bills of complaint are to the effect that the deed from Meadow River to Barnetts, insofar as it includes the property here involved, be canceled, as a cloud on the title of the Grecos, and that Meadow River be required to specifically perform the covenants contained in the deeds to the Grecos.

The controlling contentions of appellants are: That the covenants are nonenforceable, for the reason that they are violative of the rule against perpetuities; that performance of the covenants by appellants is impossible; that the Grecos are estopped to claim the right to have such enforcement; and that the grantees in the Greco deeds have an adequate remedy at law.

The rule against perpetuities, being one of public policy, is absolute and is arbitrarily enforced, notwithstanding its enforcement may do violence to clear-

ly expressed intent of the parties to the instrument. *Brookover v. Grimm,* 118 W. Va. 227, 190 S. E. 697; *Post v. Bailey,* 110 W. Va. 504, 159 S. E. 524; *Prichard v. Prichard,* 91 W. Va. 398, 113 S. E. 256; *McCreery v. Johnston,* 90 W. Va. 80, 110 S. E. 464.

Though intention of the parties to an instrument can not defeat the enforcement of the rule against perpetuities, such intention must be ascertained for the purpose of determining the effect of the instrument, i.e., whether the rule is applicable to the factual situation, and such intention is determined by usual applicable rules governing construction or application of language of written instruments. In *Prichard v. Prichard, supra,* we held: "2. The rule against perpetuities is not a rule of construction. In making application of it to the provisions of a will, the true intent of the testator must first be determined from the language used in the will, and if the instrument so interpreted offends against the rule it will be remorselessly applied, and such provision held invalid." In 70 C.J.S., Perpetuities, Section 35, it is stated: "The rule against perpetuities is a rule of law and not one of construction; hence, instruments should be construed as if the rule did not exist, and only after such construction should the rule be applied." "The question of the time of vesting is one of intent to be gathered from the instrument itself". 70 C.J.S., Perpetuities, Section 66. See 41 Am. Jur., Perpetuities, Section 13.

In the instant proceeding, the language of the covenants is clear and unambiguous. The grantees desired to purchase certain property, knowing that it was contemplated that the location of the existing public way would probably be changed westerly, according to a survey theretofore made by the state road commission and the proposed way platted, marked or staked on the ground, and that in the event such relocation was actually consummated, as then appeared very probable, there would exist a parcel of land between their property and the public way, thus ren-

dering their property of less value, if not practically worthless, especially for business purposes. In these circumstances they insisted, and the grantor agreed, in the event of such re-location, that the land ''between the property herein conveyed and the eastern boundary line of the new right-of-way'' be conveyed to the grantees ''without further cost''. Thus, it appears that by the covenants there was a definite agreement that a conveyance of the parcel of land involved would be made to the grantees, in the event of the change in the location. The covenants to have such conveyances executed were parts of the transactions, and parts of the rights and interests then acquired by the grantees and paid for by them by the considerations mentioned in the deeds. The parties could not have intended that the grantees be deprived of their valuable rights to have their lots front on a public traveled way, or to have their property taken or damaged without just compensation. While it is argued that the retention by the State of the old way affords reasonable access to the new traveled way, the covenants do not relate to ''access'', but attempt to assure the grantees that the entire frontage of their four lots would continue to be adjacent to the traveled public way. The grantees, perhaps, would have been entitled to ''access'', absent the covenants. See *Hark v. Mountain Fork Lumber Co.,* 127 W. Va. 586, 34 S. E. 2d 348; *Heavner v. State Road Commission,* 118 W. Va. 630, 191 S. E. 574.

In *Maudru v. Humphreys,* 83 W. Va. 307, 310, 98 S. E. 259, this Court said: ''After the execution of a valid contract of sale and before the legal title passes by deed, the vendor is regarded in equity as holding the legal title in trust for the vendee, and the latter as holding the purchase money in trust for the vendor. The purchaser thereby acquires a vendable interest, an equitable estate which, at his death, descends to his heirs in the same manner as a legal estate * * *'', citing numerous authorities. See *Conley v. Gaylock,* 144 W. Va. 457, 108 S. E. 2d 675; *Recco*

*v. Chesapeake and Ohio Railway Company,* 127 W.Va. 321, 32 S. E. 2d 449; *Hennen v. Deveny,* 71 W. Va. 629, 77 S. E. 142; *Ballard v. Ballard,* 25 W. Va. 470; *Lydick v. Baltimore and Ohio Railroad Co.,* 17 W. Va. 427; *Camden Safe Deposit and Trust Co. v. Scott,* 121 N.J. Eq. 366, 189 A. 653, 110 A.L.R. 1442.

In *Kidwell v. Rogers,* 103 W. Va. 272, 137 S.E. 5, the Court pointed out that ''Executory interests are held to be not mere possibilities, but substantial interests which descend by inheritance before the happening of the contingency upon which they depend. 4 Kents Comm., p. 284(*p.); Thompson *supra* par. 2199; 24 A. & E. Ency Law, p. 455-6; 11 R.C.L. p. 484-5; 21 C.J. p. 1032, par. 231; *Kean's Lessee v. Hoffecker,* 2 Harr. 103, 29 Am. Dec. 336. A limitation similar to the one here was discussed in *Medley v. Medley,* 81 Va. 265, decided in 1886. That case is of particular weight because the Virginia statute of descents at that time was practically the same as ours now. That case holds: 'Such devises are not mere possibilities, but substantial interests, and as respects transmissibility, stand on the same footing with contingent remainders * * *' ''.

In *Miller v. Miller,* 127 W. Va. 140, 31 S. E. 2d 844, the conveyance involved was on a contingency that in the event of bankruptcy of the grantee his interest in the property conveyed should cease, but that a further interest might subsequently accrue to him in the event that his brother should predecease him. The Court pointed out that the interest dependent on the last mentioned contingency was such an interest, under our statute, that it ''is property and is alienable and capable of being reached by creditors''. The statute referred to is Code, 36-1-9, which reads: ''Any interest in or claim to real estate or personal property may be lawfully conveyed or devised. Any estate in such property may be made to commence in futuro, by conveyance inter vivos, in like manner as by will, and any estate which would be good as an executory devise or bequest, shall be good if created by conveyance inter vivos.''

It is most obvious that if the "interest in or claim" acquired by the grantees in the two Greco deeds by virtue of the covenants are such interests as may be "conveyed" under the statute, or "vendable" under *Maudru v. Humphreys, supra,* or "alienable" under *Miller v. Miller, supra,* there is no prohibition against alienation and no violation of the rule against perpetuities. In 70 C.J.S., Perpetuities, Section 11, it is stated: "The rule against perpetuities has no application to present interests, legal or equitable, in reality or personality, whether or not alienable." See *Dingess and Wilson v. Drake,* 135 W. Va. 502, 64 S. E. 2d 601; *Campbell v. Fetterman's Heirs,* 20 W. Va. 398; 70 C. J. S., Perpetuities, Section 12. The rule just stated, of course, has no application to an option to purchase real estate. See *First Huntington National Bank v. Gideon-Broh Realty Co.,* 139 W. Va. 130, 79 S. E. 2d 675; *West Virginia-Pittsburgh Coal Co. v. Strong,* 129 W. Va. 832, 42 S. E. 2d 46; *Woodall v. Bruen,* 76 W. Va. 193, 85 S. E. 170; *Starcher Bros. v. Duty,* 61 W. Va. 373, 56 S. E. 524, 9 L.R.A. (N.S.) 913, 123 Am. St. Rep. 990.

We are, therefore, of the view that upon the delivery of the deeds containing the covenants, the grantees therein became immediately vested with equitable rights or interests in the parcels of land to which the covenants relate, and that the rule against perpetuities has no application to such vested interests.

We think there is no substantial merit in the contention of appellants that specific performance of the covenants is impossible. The contention is not, and could not be, founded on the fact of the subsequent conveyance to Barnetts. "Specific performance of a contract concerning the sale or conveyance of real estate may be enforced against the vendor, although he has, in the meantime, sold and conveyed the property to a third person with notice of the prior contract." 81 C.J.S., Specific Performance, Section 26c. See Code, 40-1-8; *Lathrop v. Columbia Collieries Co.,* 70 W. Va. 58, 73 S. E. 299. Apparently, appellants'

position rests on the fact that the "eastern boundary line of the new right-of-way of said Midland Trail", and the westerly line of the old way, are coextensive. The fact that the lines are coextensive, however, does not disprove the establishment of the new way, as described in the covenants and as found by the trial chancellor, as above pointed out. The "eastern boundary line" of the new way undoubtedly exists. Though the State may have elected to acquire more land than described in the original survey, the fact remains that it did elect to acquire the land described in the survey, and did construct the new road thereon. See *Bates v. Swiger,* 40 W. Va. 420, 21 S. E. 874; *Barrett v. McAllister,* 33 W. Va. 738, 11 S. E. 220; *Suburban Improvement Co. v. Scott Lumber Co.,* 67 F. 2d 335, 90 A.L.R. 330, certiorari denied 287 U. S. 660, 53 S. Ct. 123, 77 L. ed. 569.

We see no merit in the contention of appellants to the effect that the principle of equitable estoppel, or the principle of laches, precludes the right of appellees to have specific performance of the covenants. True, considerable time elapsed between the dates of the deeds containing the covenants and the completion of the project by the state road commissioner, no longer, perhaps, than often occurs in such circumstances. During that time the appellants were not misled or prejudiced by any act or representation of the grantees, and appellees concealed no material fact concerning the transaction. The grantees had duly recorded the deeds containing the covenants, and had the right to expect that the covenants would be performed, within a reasonable time, at least, subsequent to the completion of the change in the re-location of the public road. Though Barnetts made certain improvements on parts of the 0.79 of an acre conveyed to them by Meadow River, they, too, had notice of the rights of the grantees in the matter by virtue of the recordation of the deeds, and could not have been misled or prejudiced by the delay. To hold otherwise would, in effect, practically nullify the advantages

of compliance with the statutes relating to recordation of such instruments. Moreover, it would appear that the Grecos had no right to object to the use of the 0.79 of an acre by Meadow River or the Barnetts prior to the entry of the final judgment in the eminent domain proceeding, and probably not until after completion of the state road project.

In the recent case of *Stuart v. Lake Washington Realty Corporation*, 141 W. Va. 627, 92 S. E. 2d 891, this Court held: "6. The general rule governing the doctrine of equitable estoppel is that in order to constitute equitable estoppel or estoppel in pais there must exist a false representation of a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice. 7. To raise an equitable estoppel there must be conduct, acts, language or silence amounting to a representation or a concealment of material facts." In the opinion the applicable principles are discussed and numerous authorities cited. We see no necessity for further discussion here.

We are of the view that the contention of appellants to the effect that specific performance of the covenants can not be decreed, since appellees have an adequate remedy at law, is without merit. "A contract for land may be specifically executed in chancery, because each piece of land has a value arising from its local situation and circumstances peculiar to itself, especially in relation to particular persons. Damages can only be given, at law, to the amount of the market value of the property, or the value which any person wishing to purchase land, without regard to the peculiar advantages of that particular tract in relation to his own particular views, would put upon it. And therefore such damages, in general, would not be an

adequate compensation to the disappointed party. In like manner, damages given to the vendor of land for the failure to perform the contract, would, in general, not be an adequate compensation to him." 17 M.J., Specific Performance, Section 48. The rule has peculiar application to the facts of the instant suits. The market value of the small parcels of land in controversy is, perhaps, insignificant as compared to the damages which would result to the grantees in the event they were limited to recovery of the market value of such parcels. See *Miller v. Jones,* 68 W. Va. 526, 71 S. E. 248; *Armstrong v. Ross,* 61 W. Va. 38, 55 S. E. 895; *Gas Co. v. Elder,* 54 W. Va. 335, 46 S. E. 357; *Boggs v. Bodkin,* 32 W. Va. 566, 9 S. E. 891, 5 L.R.A. 245.

It is also contended that the deeds containing the covenants are not sufficiently definite to warrant a decree for specific performance, in that the land referred to in the covenants is not sufficiently described. We think, however, reference to the covenants, quoted above, will disclose the description to be entirely adequate. The land involved is described as "the strip of land" between the property conveyed and "the eastern boundary line of the new right-of-way", as evidenced by "previous survey and location stakes". Application of such description, in light of other language in the deeds, to the facts disclosed on the ground, apparently excludes any possibility of doubt as to the land intended. "It is not essential that the descriptions have such particulars and tokens of identification as to render a resort to extrinsic aid entirely needless when the writing comes to be applied to the subject matter. The terms may be abstract and of a general nature, but they must be sufficient to fit and comprehend the property which is the subject of the transaction, so that, with the assistance of external evidence, the description, without being contradicted or added to, can be connected with and applied to the very property intended, and to the exclusion of all other property * * *". 17 M.J., Specific Performance, Section 21. See *Meadow River Lumber Co. v.*

*Smith,* 126 W. Va. 847, 30 S. E. 2d 392; *Reger v. Mc-Allister,* 70 W. Va. 52, 73 S. E. 48; *Shirley, Commissioner v. Van Every,* 159 Va. 762, 167 S. E. 345.

The decree of the Circuit Court of Greenbrier County complained of is affirmed.

*Affirmed.*