672 S.E.2d 196

**Andrew YOUNG, Administrator of the Estate of David G. Young, and Andrew Young, individually, Plaintiffs Below, Appellants,**

v.

**Pamela Sue MCINTYRE, formerly known as Pamela Sue Young and the Huntington National Bank, Defendants Below, Appellees.**

No. 33872.

Supreme Court of Appeals of West Virginia.

Submitted: Sept. 24, 2008.

Decided: Dec. 10, 2008.

Floyd M. Sayre, III, Bowles Rice McDavid Graff & Love LLP, Martinsburg, for Appellants.

Pamela Sue McIntyre, Pro Se, Appellee.

BENJAMIN, Justice.[1]

This appeal is brought by Appellants Andrew Young, Administrator of the Estate of David G. Young, and Andrew Young, individually from an order of the Circuit Court of Berkeley County entered on April 16, 2007, granting Appellee Pamela Sue McIntyre's motion for summary judgment and denying plaintiffs' cross motion for summary judgment. Appellants filed the instant civil action on December 12, 2006, requesting a judgment quieting title to a one-half undivided interest in the subject property. On appeal, Appellants allege that the circuit court erred in holding that the plain language of the final order in the divorce of David Young, Appellants' father, from Pamela Sue Young did not constitute an agreement involving an

---

1. Pursuant to an administrative order entered on September 11, 2008, the Honorable Thomas E. McHugh, Senior Status Justice, was assigned to sit as a member of the Supreme Court of Appeals of West Virginia commencing September 12, 2008, and continuing until the Chief Justice determines that assistance is no longer necessary, in light of the illness of Justice Joseph P. Albright.

exchange of each party's rights and obligations with respect to their former marital domicile. Appellants also allege that the circuit court erred in holding that the property settlement agreement adopted by the final order in the divorce did not sever the joint tenancy clause of their deed of conveyance. This Court has before it the petition for appeal, all matters of record and briefs and arguments of counsel. For the reasons expressed below, the April 16, 2007, order of the Circuit Court of Berkeley County is reversed and remanded for entry of an order consistent with this opinion.

## I.

## FACTUAL AND PROCEDURAL HISTORY

Appellant Andrew Young is the Administrator of the Estate of David Young, [hereinafter referred to as "decedent"] who died intestate in Berkeley County, West Virginia on or about July 31, 2006.[2] Pamela McIntyre and the decedent were married in Washington County, Maryland, on June 30, 1982. By deed dated June 13, 1983, David Young was conveyed the property which is the subject of this dispute, located in the Arden District of Berkeley County, West Virginia.[3] By deed dated October 2, 1987, the couple, as husband and wife, was conveyed the subject property as joint tenant with rights of survivorship by deed of record in the Berkeley County clerk's office in Deed Book 423, at page 625.

On or about January 27, 2005, decedent filed a Verified Complaint in the Family Court of Berkeley County, West Virginia, for divorce, Case No. 05–D–86. The parties executed a property settlement agreement dated October 24, 2005, wherein the parties agreed, in pertinent part that:

> "The parties will continue to own the former marital domicile and shall list the property for sale in the spring of 2006. That Husband will continue to exclusively live in the house and pay the mortgage debts on the same. The parties agree to split the cost of repairs to sell the house up to $5,000 each. When the house sells, the parties will split the net proceeds equally."

The Final Divorce Order was entered on November 8, 2005, and the Property Settlement Agreement was incorporated therein and was enforceable by either party against the other through contempt powers. Decedent had exclusive possession of the subject property subsequent to the entry of the Final Divorce Order. Although the parties agreed to sell the property, it was not sold prior to the decedent's death.

Appellants filed the instant civil action on December 12, 2006, requesting a judgment quieting title to a one-half undivided interest in the subject property. Ms. McIntyre filed a motion for summary judgment on March 6, 2007. On March 23, 2007, the Appellants filed a cross motion for summary judgment. The circuit court entered an order on April 16, 2007, granting Ms. McIntyre's motion for summary judgment and denying plaintiff's cross motion for summary judgment.[4]

## II.

## STANDARD OF REVIEW

█ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law."

---

**2.** Andrew Young qualified as the administrator of the estate on or about August 7, 2006.

**3.** The subject property is more particularly described as:

> Lot No. 18 of Meadows of Arden, containing 4.612 acres, as shown on a plat and survey thereof dated August 11, 1978, made by William J. Teach, LLS, recorded in the Office of the Clerk of the County Commission of Berkeley County, West Virginia, in Plat Cabinet No. 1, Slide 27, to which plat reference is hereby made for a metes and bounds description of the real estate...
>
> By Clarence E. Martin, III, Trustee, said deed recorded in the office of the Clerk of the County Commission of Berkeley County, West Virginia, in Deed Book 369, at page 553.

**4.** Subsequent to this Court's acceptance of the instant appeal, Ms. McIntyre's counsel, Michael Scales, withdrew as the attorney of record. Ms. McIntyre has remained unrepresented following her attorney's withdrawal, and has not filed a responsive brief in this matter.

*Williams v. Precision Coil, Inc.,* 194 W.Va. 52, 59, 459 S.E.2d 329, 336 (1995). "A circuit court's entry of summary judgment is reviewed *de novo.*" Syl. Pt. 1, *Painter v. Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Furthermore, "questions of law and statutory interpretation are subject to de novo review." Syl. Pt. 1, *Burnside v. Burnside,* 194 W.Va. 263, 460 S.E.2d 264 (1995). Mindful of these standards, we proceed to consider the arguments of the parties.

## III.

## DISCUSSION

Appellants ask us to consider two issues in this matter. The first being whether the circuit court erred in holding that the plain language of the final order in the divorce did not constitute an agreement involving an exchange of each parties' rights and obligations with respect to the property or equitable conversion. The second being whether the circuit court erred in holding that the property settlement agreement did not sever the joint tenancy clause of the deed of conveyance. We address each of these issues in turn.

### A.

### *Equitable Conversion*

■ The parties entered into a property settlement agreement dated October 24, 2005, wherein they agreed to repair the real estate, list it, sell it, and split the proceeds when sold. The property settlement agreement was adopted by the lower court in the final Divorce Order dated November 8, 2005. Under the express terms of the final order, the decedent was given exclusive possession of the property.

Appellants allege that by entering into the property settlement agreement, the parties made an equitable conversion of the real estate, entitling each to a one-half interest in the economic value of the property. Appellants rely upon our prior decision in *Timberlake v. Heflin,* 180 W.Va. 644, 379 S.E.2d 149 (1989), wherein we held that when a contract to sell is made, the document of equitable conversion comes into play. *Id.* at 650, 379 S.E.2d at 155.

In *Timberlake,* a former husband sued his former wife seeking specific performance of a parol contract for transfer of her interest in their home owned as joint tenants with a right of survivorship. The former husband died after the petition for appeal was accepted. Therein, we evaluated whether a valid contract for a sale of the property existed, and whether the statute of frauds was satisfied. We found that because the divorce complaint stated that the former wife agreed to convey her interest to her husband, and the husband had contracted, as a joint tenant with a right of survivorship, to buy his fellow joint tenant's interest, the death of the purchaser did not operate to permit the survivorship incident in the deed to transfer his interest, if the purchaser's heirs or administrator were willing to complete the purchase contract. In arriving at this decision, this Court looked to the doctrine of equitable conversion enunciated in *Maudru v. Humphreys,* 83 W.Va. 307, 310–11, 98 S.E. 259, 260 (1919), wherein we held that:

> "After the execution of a valid contract of sale and before legal title passes by deed, the vendor is regarded in equity as holding the legal title in trust for the vendee, and the latter as holding the purchase money in trust for the vendor. The purchaser thereby acquires a vendable interest, an equitable estate which, at his death, descends to his heirs in the same manner as a legal estate."

Because the former wife acknowledged the contract in her divorce complaint, this Court found that the former husband, as vendee, acquired equitable title to the wife's one-half interest in the property as outlined in *Maudru.* Thus, his heirs were entitled to specific performance in such a situation. *Id.*

In the case *sub judice,* the facts before us do not present an equitable conversion as contemplated in *Timberlake.* Herein, Appellants have not presented an actual contract for the sale of the subject property. Rather, they present a contract wherein the parties agree to sell the subject property at a specified future date and split the proceeds equally. Because there has been no agreement by

the joint tenants to convey their interest to a specific identified purchaser, no conveyance of legal title has yet taken place. Thus, no purchaser has acquired a vendable interest making the doctrine of equitable conversion applicable.

Although we find that the doctrine of equitable conversion, as applied in our jurisprudence, is inapplicable to the facts presented herein, we still find that the property settlement agreement did create a valid agreement to sell the property. Clearly it was the intent of the parties to liquidate the marital asset and disburse the funds equally. The property settlement agreement was incorporated into the divorce order, and the parties had a right to enforce their rights under the agreement. We have previously recognized that when an agreement by divorcing spouses concerning property rights is approved by the court and incorporated into a divorce decree, it becomes merged in the decree and the rights of the parties thereafter rest upon the decree. *See Farley v. Farley,* 149 W.Va. 352, 141 S.E.2d 63 (1965); *Corbin v. Corbin,* 157 W.Va. 967, 206 S.E.2d 898 (1974). We think that in such circumstances, normal rules of contract construction should apply in interpreting the terms of the agreement. Courts should give effect to the intentions of the parties and the court, as determined from the language of the unambiguous instrument. "In construing a deed, will, or other written instrument, it is the duty of the court to construe it as a whole, taking and considering all the parts together, and giving effect to the intention of the parties wherever that is reasonably clear and free from doubt, unless to do so will violate some principle of law inconsistent therewith." Syl. Pt. 3, *Farley v. Farley,* 215 W.Va. 465, 600 S.E.2d 177 (2004); *See also Dompke v. Dompke,* 186 Ill.App.3d 930, 134 Ill.Dec. 715,

542 N.E.2d 1222 (1989). Having decided that a valid agreement to sell the property exists, we must next consider whether the agreement severs the joint tenancy clause in the deed.

### B.

### *Severance of the Joint Tenancy*

In Syllabus Point 1, *Herring v. Carroll,* 171 W.Va. 516, 300 S.E.2d 629 (1983), we held that:

> "In order to create a common law joint tenancy in real property the parties must receive an undivided interest under four conditions: 1) each party's undivided interest must vest at the same time; 2) each party must receive an undivided interest in the whole estate; 3) each party's possession must be coequal so that his property interest is the same as to the legal estate and duration; and 4) each party must receive his interest in the same title document. These four conditions for the creation of a common law joint tenancy are commonly abbreviated as the four unities of time, interest, possession and title. The main attribute of a common law joint tenancy was the right to survivorship."

*Id.*

We have recognized that the common law incident of survivorship in a joint tenancy has been altered by W. Va.Code § 36–1–19.[5] We have rather uniformly held that this statute abrogates the right of survivorship in a common law joint tenancy unless under W. Va.Code § 36–1–20, "it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should then belong to the others." *Id.* at Syl. Pt. 3.[6]

---

5. West Virginia Code § 36–1–19 (1923) provides: "When any joint tenant or tenant by the entireties of an interest in real or personal property, whether such interest be a present interest, or by way of reversion or remainder or other future interest, shall die, his share shall descend or be disposed of as if he had been a tenant in common."

6. A statutory right of joint tenancy was created in West Virginia Code § 36–1–20 (1923), which, in pertinent part, provides:

(a) the preceding Section [§ 36–1–19] shall not apply to any estate which joint tenants have as executors or trustees, nor to an estate conveyed or devised to a person in their own right, when it manifestly appears from the tenor of the instrument that it was intended that the part of the one dying should then belong to the other. Neither shall it effect the mode of proceeding on any joint judgment or decree in favor of, or on the contract with two or more, if one of them dies.

There is a strong statutory presumption in favor of construing joint tenancies as tenancies in common without the right of survivorship. However, this presumption may be overcome by a clear and convincing showing that the intention of the parties to create a joint tenancy with rights of survivorship. *Lieving v. Hadley*, 188 W.Va. 197, 423 S.E.2d 600 (1992). We have also specifically held that West Virginia Code § 36-1-19 and § 36-1-20 do not abolish the common law requirement of the four unities in a joint tenancy. Syl. Pt. 5, *Herring v. Carroll*, 171 W.Va. 516, 300 S.E.2d 629. In *Herring*, we recognized that:

> "Any act of a joint tenant which destroys one or more of its necessarily co-existent unities operates as a severance of the joint tenancy and extinguishes the right of survivorship. The act of one joint tenant in severing his interest in the property by alienation severs the joint tenancy to that extent, so that if there were but two tenants, the joint tenancy is terminated."

Id. at 520, 633.

This Court has not yet decided the effect of a divorce and property settlement agreement upon the questions of the survival of the joint tenancy. Appellants contend that several courts have found that a divorce decree itself destroys the unity of possession and, thus, causes a severance. *Carson v. Ellis*, 186 Kan. 112, 348 P.2d 807 (1960); *In re Estate of Estelle*, 122 Ariz. 109, 593 P.2d 663, 665 (1979); *Estate of Seibert*, 226 Cal.App.3d 338, 276 Cal.Rptr. 508, 510 (1990); *Gaskie v. Hugins*, 640 P.2d 248, 249 (Colo.App.Ct.1981). However, we decline to hold that a divorce decree, alone, causes a severance of a joint tenancy. The right of survivorship of a joint tenant does not arise out of the marriage relationship. Absent either an express intent to sever or conduct inconsistent with the continuation of the joint tenancy, the right of survivorship will continue after a dissolution of the marriage of joint tenants.

In reviewing the property settlement agreement herein, it is illogical to believe it was the intent of the decedent to maintain the joint tenancy of the property and allow an unintended benefit to his ex-wife. The Appellants assert, and we agree, that the happenstance of the death of Mr. Young should not operate as a windfall to the Ms. McIntyre and leave the decedent's sole heir without any interest in the real estate. We observe that other jurisdictions have followed this reasoning in severing the tenancy. *Wardlow v. Pozzi*, 170 Cal.App.2d 208, 338 P.2d 564, 566 (1959)("hard to see how two persons in domestic difficulties, and desirous of settling their domestic problems" would desire continuation of joint tenancy.); *Rich v. Silver*, 226 Cal.App.2d 60, 37 Cal.Rptr. 749, 751 (1964); *Guilbeault v. St. Amand*, No. 93569, 1993 WL 392943 at *5 (Conn.Super. Sept. 28, 1993)(concluding that severance found when "the conduct of the parties voluntarily evidenced their intention to sever the joint tenancy with the right of survivorship and hold their property as tenants in common"); *In re Marriage of Dowty*, 146 Ill. App.3d 675, 100 Ill.Dec. 187, 496 N.E.2d 1252, 1254 (1986)(finding that trial testimony at divorce evidenced intent to sever because parties desired to sell and divide proceeds "as soon as reasonably possible."); *Brodzinsky v. Pulek*, 75 N.J.Super. 40, 182 A.2d 149, 156 (1962)(finding severance where joint tenants "by their conduct and course of dealing, mutually treated the subject mortgages as held by them as tenants in common."); *Estate of Blair*, 199 Cal.App.3d 161, 244 Cal. Rptr. 627, 632 n. 3 (1988)(court finding it unlikely that either spouse would desire "to make the macabre gamble" of being the survivor if one party died pending dissolution.)

We believe that in circumstances of divorce, such as the present, joint tenants can agree to hold as tenants in common and thus sever the joint tenancy. Such an agreement can be express or implied from conduct of the parties inconsistent with holding in joint tenancy. Again, we observe similar

---

In 1981, this section was amended to add the following subdivision (b):

"When the instrument of conveyance or ownership in any estate, whether real estate or tangible or intangible personal property, links multiple owners together with the disjunctive 'or', such ownership shall be held as joint tenants with the right of survivorship, unless expressly stated otherwise."

decisions from other jurisdictions. *See Dompke v. Dompke*, 542 N.E.2d; *Thomas v. Johnson*, 12 Ill.App.3d 302, 297 N.E.2d 712 (1973); *Mamalis v. Bornovas*, 112 N.H. 423, 297 A.2d 660 (1972); *Wardlow v. Pozzi*, 170 Cal.App.2d 208, 338 P.2d 564. *See generally* 48a C.J.S. Joint Tenancy § 18; Tiffany on Real Property [3d Ed.] Vol. 2, § 425. "A course of dealing by joint tenants in reference to the property jointly owned may by implication establish a severance, termination, or abandonment of the joint tenancy." *What Acts By One or More of Joint Tenants Will Sever or Terminate the Tenancy*, 64 A.L.R.2d 918, pp. 949–950 (1959). Acknowledging this standard, the question here becomes whether the conduct of the parties and the course of dealing between them is "sufficient to indicate that all parties mutually treated their interests as belonging to them in common." 48 C.J.S. Joint Tenancy, § 4, p. 928.

In the instant case, the terms of this agreement were sufficient to cause destruction of the four unities by implication. The language in the property settlement agreement and the action of the parties immediately thereafter evinces an agreement to dissolve the joint tenancy as they agreed to repair the real estate, list it, sell it, and split the proceeds when sold. The decedent was given exclusive possession of the property pending the sale. When we look at the context in which the agreement was made, the circumstances at the time, and the bargaining by equals with respect to the dissolution of their martial status, it is readily apparent herein that the couple did not make the agreement with the view that their rights of survivorship would be maintained subsequent to the divorce but prior to the property being sold. The conduct of the parties plainly evidenced their intention to sever the joint tenancy with the right of survivorship and hold their property as tenants in common. The lower court merged and incorporated the property settlement agreement into its final divorce order. Therefore, each party has been entitled to its enforcement since the entry of the divorce decree, and the lower court was required to enforce performance of those obligations under the final divorce order so as to fully execute its terms.

To find that the joint tenancy remained unsevered would clearly be in direct contradiction to the intent of the property settlement agreement. Given our strong statutory presumption in favor of construing joint tenancies as tenancies in common without the right of survivorship, we believe that when the agreement of the parties evidences an intent to sever to joint tenancy, termination of the joint tenancy is the logical decision. We wish to make it clear that by holding that joint tenants in circumstances of divorce can agree, expressly or impliedly, to hold as tenants in common and thus sever the joint tenancy, this does not abolish the requirement of the traditional four common law unities for a joint tenancy. We continue to acknowledge, as we did in *Herring v. Carroll*, 171 W.Va. 516, 300 S.E.2d 629, that our statutory law, W. Va.Code § 36–1–19 and § 36–1–20, does not abolish the unities. The usefulness of the unities is better determined on a case-by-case basis. Subsequent to this decision, either tenant still retains the power to sever a joint tenancy by destroying one or more of the unities.

## IV.

### CONCLUSION

For the foregoing reasons, we conclude that the Circuit Court of Berkeley County erred in finding that the joint tenancy at issue in this case was not severed. Accordingly, we reverse the decision of the circuit court, and remand the matter for entry of an order consistent with this decision.

**Reversed and Remanded.**

Justice ALBRIGHT not participating.

Senior Status Justice McHUGH sitting by temporary assignment.